UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL CASON, | No. C-10-0792 EMC |
| Plaintiff, | |
| v. | **ORDER RE OPTIMUM HEALTH INSTITUTE SUBPOENA** |
| FEDERATED LIFE INSURANCE COMPANY, | **(Docket No. 50)** |
| Defendant. _____/ | |

Plaintiff Cheryl Cason has filed suit against Defendant Federated Life Insurance Co. ("Federated"), asserting, in essence, a claim for disability insurance bad faith. As a part of discovery, Federated issued a subpoena to a third party, Optimum Health Institute ("OHI"). OHI objected to the subpoena, claiming various privileges. The current dispute before the Court is over OHI's assertion of those privileges.

## I. FACTUAL & PROCEDURAL BACKGROUND

As noted above, the instant case is a disability insurance bad faith action. During discovery, Federated issued three subpoenas to OHI. It appears that Federated's decision to subpoena OHI was a result of Ms. Cason testifying during her deposition that she had either attended OHI for some kind of treatment or therapy and/or worked there. *See, e.g.*, Docket No. 51 (Costa Decl., Ex. H) (letter).

In the first subpoena, Federated asked OHI to produce medical and employment records related to Ms. Cason. *See id.* (first subpoena). OHI responded by letter that it would not produce documents because it is not a health facility but rather a church. *See id.* (Costa Decl., Ex. B) (letter).

1    Subsequently, Federated issued a second subpoena to OHI, this time seeking only employment records related to Ms. Cason. *See id.* (Costa Decl., Ex. C) (second subpoena). In response, OHI voluntarily produced several documents. Documents produced included drug test results for Ms. Cason, a pre-employment background information report on Ms. Cason, and a missionary application form filled out by Ms. Cason, dated September 28, 2010. *See id.* (Costa Decl., Ex. D) (documents produced).

Federated followed the second subpoena with a third. In the third subpoena, Federated asked OHI to produce both a witness for deposition and documents. The documents requested were those related to Ms. Cason's attendance at OHI. *See id.* (Costa Decl., Ex. E) (third subpoena). OHI responded to this subpoena by letter. In the letter, it stated that it would not produce documents because it is a church and not a health facility. According to OHI, the subpoena violated its constitutional rights of privacy, free association, and freedom of religion. *See id.* (Costa Decl., Ex. G) (letter). Thereafter, OHI prepared formal written objections to the subpoena, asserting the same. *See id.* (Costa Decl., Ex. J) (objections).

Federated then sought judicial assistance to obtain the discovery requested. More specifically, it asked the Court to issue an order to show cause, requiring OHI to demonstrate why it was not in contempt for failure to comply with the subpoena. OHI filed a response, and the Court subsequently held a hearing on April 13, 2011. At the hearing, the Court asked Federated to provide supplemental briefing, more specifically,

> a proposal to narrow and clarify its subpoena. Defendant shall set forth with greater precision and specificity the documents it seeks from OHI (e.g. course descriptions for classes taken by Plaintiff, schedule of her jobs & tasks, etc.) consistent with the Court's observation that the request must be narrowly tailored and strongly justified in light of the privacy and constitutional interests potentially at stake.

Docket No. 66 (Order at 1).

Federated complied with the Court's order. After reviewing Federated's supplemental briefing, the Court issued an order requiring OHI to produce for *in camera* review documents related to, *inter alia*, (1) the dates of Ms. Cason's attendance at OHI, (2) Ms. Cason's participation in scheduled classes at OHI, and (3) documents filled out by Ms. Cason while at OHI. *See* Docket No.

2

73 (Order at 1-2).  The Court specified that "OHI need not produce documents which contain[] the names of guests or Missionaries unless the document contains [Ms.] Cason's name, in which case the names of other guests or Missionaries may be redacted." *Id.* (Order at 2).  The Court also held that, so long as OHI's custodian of record authenticated the documents, the custodian would not be required to give deposition testimony.

OHI lodged documents with the Court pursuant to its order.  OHI provided both documents over which it did not claim a privilege as well as documents over which it did claim a privilege.  OHI also provided a privilege log, identifying which privileges were being asserted.  The issue for the Court is which documents provided for *in camera* review, if any, should be produced in response to Federated's subpoena.

## II. DISCUSSION

As noted above, for some of the documents lodged with the Court, OHI did not assert any privilege.  Accordingly, the Court orders that these documents be produced to Federated.

There are eight documents over which Federated does assert a privilege.  One of these documents has already been produced by OHI in response to the second subpoena.  *Compare* Docket No. 51 (Costa Decl., Ex. D) (OHI missionary application, dated 9/28/2010), *with* OHI 37-41 (same).  Accordingly, any privilege has been waived.[1]

For the seven remaining documents, they are described in OHI's privilege log as follows: (1) attendance records; (2) missionary check-in; (3) time sheet; (4) missionary application; and (5)-(7) missionary requests for extension.  For each of these documents, OHI asserts the following privileges: (1) the religion clauses of the First Amendment of the U.S. Constitution; (2) the religion clauses of the California Constitution; (3) the right to privacy under the U.S. Constitution; (4) the right to privacy under the California Constitution; and (5) the right of free association.  For the missionary application and the missionary requests for extension (*i.e.*, documents (4)-(7)), OHI asserts one additional privilege, *i.e.*, (6) the clergy-penitent privilege as codified in California

---

[1] Technically, the missionary application that OHI voluntarily produced was missing one page as well as part of another.  As a matter of fairness, Federated is entitled to a copy of the entire application since it was substantially produced by OHI.

3

1  Evidence Code §§ 1030-1034. In addressing whether any of these privileges is applicable, the Court
2  assumes that OHI is a church-related institution with a substantial religious character. *See* Docket
3  No. 60 (Obj. at 5) (claiming that "OHI is a mission operated by Free Sacred Trinity Church"); *see*
4  *also Lemon v. Kurtzman*, 403 U.S. 602, 616 (1971) (stating that "[t]he substantial religious character
5  of these church-related schools gives rise to entangling church-state relationships of the kind the
6  Religion Clauses sought to avoid").

7  A.     <u>Religion Clauses of the First Amendment</u>

8  The First Amendment provides in relevant part that "Congress shall make no law respecting
9  an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. This
10 provision is construed has having two religion clauses: (1) the Establishment Clause which
11 commands a separation of church and state and (2) the Free Exercise Clause which requires
12 government respect for and noninterference with a person's religious beliefs and practices. *See*
13 *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). In the instant case, OHI argues that the subpoena
14 violates both the Establishment and Free Exercise Clauses. For the reasons discussed below, the
15 Court disagrees.

16       1.     <u>Establishment Clause</u>

17 As noted above, the Establishment Clause commands a separation of church and state. In its
18 papers, OHI has failed to explain how the subpoena violates the Establishment Clause. *See* Docket
19 No. 60 (Obj. at 7) (simply referring to the Establishment Clause and what it prohibits). For that
20 reason alone, the claimed privilege cannot stand. *Cf. United States v. Richey*, 632 F.3d 559, 566 (9th
21 Cir. 2011) (stating that "[t]he party asserting the attorney-client privilege has the burden of
22 establishing the relationship and privileged nature of the communication").

23 Moreover, on the merits, OHI's position fails. The governmental action challenged by OHI
24 is a subpoena. *See* Fed. R. Civ. P. 45(a)(1)(A)(i), (3) (providing that a subpoena is issued from a
25 court and that an attorney may issue and sign a subpoena as an officer of the court). In *Lemon v.*
26 *Kurtzman*, 403 U.S. at 602, the Supreme Court established a three-part test for determining whether
27 a governmental action violates the Establishment Clause. *See Access Fund v. USDA*, 499 F.3d 1036,
28 1042 (9th Cir. 2007) (stating that "[t]he *Lemon* test remains the benchmark to gauge whether a

1 particular government activity violates the Establishment Clause"). "Under the *Lemon* test, to be
2 constitutional (1) the challenged governmental action must have a secular purpose; (2) 'its principal
3 or primary effect must be one that neither advances nor inhibits religion'; and (3) it 'must not foster
4 an excessive government entanglement with religion.'" *Newdow v. Rio Linda Union Sch. Dist.*, 597
5 F.3d 1007, 1017 (9th Cir. 2010).

6 "'The purpose prong of the *Lemon* test asks whether government's actual purpose is to
7 endorse or disapprove of religion.'" *Nurre v. Whitehead*, 580 F.3d 1087, 1096 (9th Cir. 2009). In
8 the instant case, OHI presumably contends the latter. However, any argument that the "'ostensible
9 and predominant purpose'" of a subpoena is to inhibit religion, *id.*, is without merit. There can no
10 doubt that subpoenas generally have a secular purpose; they are simply tools used for discovery in
11 litigation. Moreover, the specific subpoena here clearly has a secular purpose. Federated's
12 subpoena seeks information about Ms. Cason, not OHI directly, and only because she has initiated
13 this lawsuit against Federated, claiming disability insurance bad faith. OHI has been implicated in
14 the lawsuit only because Ms. Cason testified during her deposition that she attended OHI for
15 treatment or therapy and/or worked there.

16 As for the effect prong of the *Lemon* test, it "'asks whether, irrespective of the government's
17 actual purpose, the practice under review in fact conveys a message of endorsement or
18 disapproval.'" *Fund v. United States Dep't of Agric.*, 499 F.3d 1036, 1044 (9th Cir. 2007). The
19 effect prong is analyzed "from the point of view of a reasonable observer who is 'informed . . . [and]
20 familiar with the history of the government practice at issue.'" *Vasquez v. L.A. County*, 487 F.3d
21 1246, 1256 (9th Cir. 2007). For reasons similar to above, a reasonable, objective observer would not
22 view either subpoenas generally or the specific subpoena issued by Federated as an act of hostility,
23 either toward OHI or religion in general. *See id.*

24 Finally, under the entanglement prong of the *Lemon* test, a court asks whether the
25 involvement of the government with religion, or vice-versa, "is excessive, and whether it is a
26 continuing one calling for official and continuing surveillance leading to an impermissible degree of
27 entanglement." *Walz v. Tax Comm'n of N.Y.*, 397 U.S. 664, 675 (1970).

28

> [T]here are two types of entanglement: administrative entanglement and political entanglement. "Administrative entanglement typically involves comprehensive, discriminating, and continuing state surveillance of religion." "[P]olitical entanglement [occurs when] political divisiveness result[s] from government action which divides citizens along political lines," and by itself is insufficient to constitute excessive entanglement.

*Nurre*, 580 F.3d at 1097. Clearly, a narrowly drawn subpoena, which is essentially a one-time occurrence, does not involve continuing surveillance, and there is nothing to suggest that a subpoena – including the one here – would result in political divisiveness.

Accordingly, the Establishment Clause affords no protection to the OHI documents at issue.

### 2. Free Exercise Clause

As stated above, the Free Exercise Clause requires government respect for and noninterference with a person's religious beliefs and practices. Similar to above, OHI has invoked the protection of the Free Exercise Clause without providing any substantive supporting argument. Accordingly, the claimed privilege should be rejected on that basis alone.

Moreover, OHI's contention that the Free Exercise Clause protects the documents at issue from production lacks substantive merit. Notably, one of the cases cited by OHI, *Roman Catholic Archbishop of Los Angeles v. Superior Court*, 131 Cal. App. 4th 417 (2005), establishes the lack of merit to its arguments here.

In *Roman Catholic*, an archdiocese and two priests (collectively, "petitioners") challenged grand jury subpoenas which sought documents related to child sexual abuse allegedly committed by the priests. The petitioners argued, *inter alia*, that the subpoenas violated the Free Exercise Clause of the First Amendment. The state court disagreed, noting that, under U.S. Supreme Court precedent, "'the right of free exercise does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."'" *Id.* at 431 (quoting *Employment Div., Dep't of Hum. Res. Of Or. v. Smith*, 494 U.S. 872, 879 (1990)); *see also Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-32 (1993) (stating that "a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the

incidental effect of burdening a particular religious practice"). In response to the petitioners' argument that subpoenas are not neutral laws of general application, the court stated as follows:

> This argument misconstrues the notion of generally applicable neutral laws. "A law is not neutral toward religion if its 'object . . . is to infringe upon or restrict practices because of their religious motivation. . . .' A law is not generally applicable if it 'in a selective manner impose[s] burdens only on conduct motivated by religious belief . . . .' The neutral law of general applicability at issue here is the statutory and common law basis of California's grand jury process. That this particular grand jury investigation and the subpoenas it generated are directed at a Catholic archdiocese is merely an incidental effect of the grand jury process.

*Roman Catholic*, 131 Cal. App. 4th at 433. The Court finds the reasoning in *Roman Catholic* sound and equally applicable here. That is, the subpoena at issue here is a result of a neutral law of general applicability, and therefore the right of free exercise does not relieve OHI of its obligation to comply with the subpoena.

Finally, the Court emphasizes that OHI has made no showing that producing the types of documents at issue here (*e.g.*, attendance records, missionary check-in, time sheet) would result in interference either with OHI or its adherents' free exercise of religion. Indeed, based on the Court's *in camera* review, it is hard pressed to see how there would be any such interference.

B.  <u>Religion Clauses of the California Constitution</u>

Like the U.S. Constitution, the California Constitution also contains two religion clauses. The state constitution provides in relevant part: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. . . .The Legislature shall make no law respecting an establishment of religion." Cal. Const., art. I, § 4.

1.  <u>Establishment Clause</u>

The California Supreme Court has held that the state Establishment Clause is coextensive with the federal. *See East Bay Asian Local Dev. Corp. v. California*, 24 Cal. 4th 693, 718 (2000) (stating that "the California concept of a 'law respecting an establishment of religion' coincides with the intent and purpose of the First Amendment establishment clause"). Accordingly, OHI's invocation of the state Establishment Clause fails for reasons stated in Part II.A.1, *supra*.

### 2. Free Exercise Clause

In contrast to above, it is not clear whether the California Free Exercise Clause is coextensive with the federal. *See Catholic Charities of Sacramento, Inc. v. Superior Court*, 32 Cal. 4th 527, 562 (2004) (declining "to declare the scope and proper interpretation of the California Constitution's free exercise clause"). However, even assuming the scrutiny most favorable to OHI, *i.e.*, strict scrutiny, *see id.* (assuming strict scrutiny analysis applicable), OHI's contention that the subpoena violates the Free Exercise Clause fails.

Under a strict scrutiny standard, "a law could not be applied in a manner that substantially burdened a religious belief or practice unless the state showed that the law represented the least restrictive means of achieving a compelling interest or, in other words, was narrowly tailored." *Id.* This standard – also known as the *Sherbert* standard – was that applied by the U.S. Supreme Court prior to *Smith*. *See id.* (citing *Sherbert v. Verner*, 374 U.S. 398 (1963)). In the instant case, the critical issue is whether the subpoena constitutes a substantial burden because only then is strict scrutiny triggered.

Case law indicates that a substantial burden[2] "must be more than an inconvenience." *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir. 1995), *abrogated on other grounds in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). In general, a governmental burden is considered substantial when it has a "tendency to coerce individuals into acting contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988); *see also Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (concluding that choice between unemployment benefits or religious duties imposed a substantial burden because it exerted "substantial pressure on an adherent to modify his behavior and to violate his beliefs").

OHI contends that the subpoena here is a substantial burden because

> [r]equiring a church to disclose information about any particular member's or adherent's experiences or actions, would have a devastating effect on any church. Anyone considering visiting [Free Sacred Trinity Church/OHI] – or any church – would know that any

---

[2] In evaluating what is a substantial burden, the Court looks to federal law because, in *Catholic Charities*, the California Supreme Court applied the strict scrutiny standard as articulated by the U.S. Supreme Court in *Sherbert*.

8

United States District Court
For the Northern District of California

> and all their communications and activities could be made public at any time a court of law might deem it marginally "relevant" to civil litigation which did not even involve the church.

Docket No. 60 (Obj. at 6). The problem with OHI's argument is that it ignores context. The particular situation here arose because Ms. Cason initiated the instant action against Federated, claiming disability insurance bad faith, and then testified during her deposition that she received treatment or therapy at OHI and/or worked there. The uniqueness of the context here consequently demonstrates that the chilling effect conjured by OHI is grossly exaggerated and unlikely to result. Furthermore, the nature of the documents sought is such that their production is not so invasive and unlikely to chill the exercise of religion.

C. <u>Federal and State Right to Privacy</u>

"To evaluate privacy objections under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in [the information]." *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 U.S. Dist. LEXIS 58748, at *7 (N.D. Cal. July 31, 2008); *see also Verma v. American Express*, No. C 08-2702 SI, 2009 U.S. Dist. LEXIS 46702, at *3 (N.D. Cal. May 26, 2009) (stating that "[a] plaintiff's right to privacy under California and federal law . . . must be balanced against the right of civil litigants to discover relevant facts"). In the instant case, Federated has adequately demonstrated a need for the information from OHI – *e.g.*, to compare her activity before her claim of disability and her activity after. *See generally* Docket No. 71 (supplemental briefing). In response, OHI contends that this is not a compelling need, as required by California law. *See, e.g.*, *Lantz v. Superior Court*, 28 Cal. App. 4th 1839, 1853-54 (1994) (stating that, "when the constitutional right of privacy is involved, . . . [t]he party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced"). But OHI fails to take into account that there must be a privacy interest in the first place before the compelling need requirement is triggered. Here, the Court sees little, if any, privacy interest in the documents at issue. There is no private information revealed about third parties and the documents shed little light on any religious teachings or doctrine of OHI. To the extent there is any privacy

interest, it is because Ms. Cason's personal information is at issue, and OHI has failed to show that it has any standing to invoke Ms. Cason's privacy rights.

D. <u>Associational Privacy</u>

The First Amendment right of freedom of association includes the protection of privacy of association. *See Andersen v. United States*, 298 F.3d 804, 810-11 (9th Cir. 2002) (noting that "[t]he concern for the protection of the right of free association, and the ability to maintain one's privacy in that association, is especially present in political, economic, and religious organizations"). Because of the importance of this right, the Court noted in its order requiring *in camera* production of documents that "OHI need not produce documents which contain[] the names of guests or Missionaries unless the document contains [Ms.] Cason's name, in which the names of other guests or Missionaries may be redacted." Docket No. 73 (Order at 2).

The documents that have been submitted by OHI for *in camera* review do not disclose any association with OHI by anyone other than Ms. Cason. To the extent OHI argues that even Ms. Cason's association with OHI is a privileged matter, *see* Docket No. 60 (Obj. at 10), the Court notes that Ms. Cason is also a holder of that privilege and she implicitly waived that privilege by testifying about her attendance at OHI during her deposition.

E. <u>Clergy-Penitent Privilege</u>

As OHI points out, the California Evidence Code provides for a clergy-penitent privilege. *See* Cal. Evid. Code §§ 1030-1034. In the instant case, OHI has asserted the privilege for those documents it has described as missionary application or missionary request for extension. The assertion of this privilege here, however, fails for several reasons.

First, OHI never asserted the privilege as part of its initial objections, *see* Docket No. 60 (objections), and therefore any privilege has been waived.[3]

///

///

---

[3] The Court notes that, under the California Evidence Code, both the clergy member and the penitent hold the privilege. *See* Cal. Evid. Code §§ 1033-1034. Ms. Cason, however, has not asserted the privilege.

1  Second, waiver aside, OHI has failed to make a prima facie showing that the privilege is
2 applicable. Under the California Evidence Code only a "penitential communication" is privilege.
3 "Penitential communication" is defined as

> a communication made in confidence, in the presence of no third person so far as the penitent is aware, to a member of the clergy who, in the course of the discipline or practice of the clergy member's church, denomination, or organization, is authorized or accustomed to hear those communications and, under the discipline or tenets of his or her church, denomination, or organization, has a duty to keep those communications secret.

8 Cal. Evid. Code § 1032. OHI has made no showing that either Ms. Cason's application or her
9 requests for an extension were made to a clergy member authorized or accustomed to hear such
10 communications and with a duty to keep those communications secret.

11  Finally, even if there had been no waiver by a failure to assert the privilege in the first
12 instance, the privilege was waived when OHI voluntarily disclosed to Federated the missionary
13 application dated September 28, 2010. *Compare* Docket No. 51 (Costa Decl., Ex. D) (OHI
14 missionary application, dated 9/28/2010), *with* OHI 37-41 (same). Waiver is provided for by
15 California Evidence Code § 912(a). The statute states in relevant part:

> Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section . . . 1033 (privilege of penitent), 1034 (privilege of clergyman), . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone.

20 Cal. Evid. Code § 912(a).

21  The Court acknowledges that § 912(a) refers to "a communication"; thus, an argument could
22 be made that the scope of the waiver should extend only to the specific communication that was
23 disclosed. However, that restrictive approach has not been adopted by the California courts. In
24 *Jones v. Superior Court*, 119 Cal. App. 3d 534 (1981), the state court stated:

> We are prepared to accept that the term "communication" deserves, in this context, a liberal construction. A patient, for example, who has disclosed her conversation with a physician on Monday ought not to be permitted to claim the privilege with respect to a conversation with the same physician and relating to the same subject matter on Tuesday. Arguably, the same is true where the patient consults more than one

11

> physician concerning the same subject matter, and discloses her communication with one of them.

*Id.* at 547 (but acknowledging that "it would distort the statutory language beyond its apparent meaning to say that the waiver extends to all communications with any physician at any time"). The court went on to note that

> the scope of the waiver should be determined primarily by reference to the purpose of the privilege. . . . Where the disclosure sought is *so related* to the disclosure already made that the [privilege holder] could not reasonably retain a privacy interest in preventing it, then the purpose of the privilege no long exists, and it may be said that the privilege has been waived.

*Id.* (emphasis added); *see also Manela v. Superior Court*, 177 Cal. App. 4th 1139, 1148 (2009) (stating the same).

In the instant case, OHI voluntarily disclosed the missionary application dated September 28, 2010. The missionary application dated August 11, 2009, and missionary requests for extension are sufficiently related to this disclosure that OHI could not reasonably retain a privacy interest in preventing the disclosure of these documents as well. Each of the documents concerned Ms. Cason's time at OHI as a missionary.

### III. CONCLUSION

For the foregoing reasons, the Court orders each of the documents submitted for *in camera* review to be produced to Federated. OHI shall produce the documents to Federated within five Court days of the date of this order.

This order disposes of Docket No. 50.

IT IS SO ORDERED.

Dated: May 20, 2011

_____
EDWARD M. CHEN
United States District Judge

12